UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE I.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02674-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Claimant Michelle I. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on May 18, 2017, alleging an onset date of April 2, 2014. [Dkt. 10-2 at 17.] Her application was initially denied on September 29, 2017, [Dkt. 10-4 at 5], and upon reconsideration on January 5, 2018, [Dkt. 10-4 at 15]. Administrative Law Judge Shelette Veal conducted a hearing on August 1, 2019. [Dkt. 10-2 at 37-65.] During the hearing, Claimant amended her alleged onset date to June 21, 2016. [Dkt. 10-2 at 17.] The ALJ issued a decision on September 16, 2019, concluding that Claimant was not entitled to receive benefits.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[Dkt. 10-2 at 14-29.] The Appeals Council denied review on August 19, 2020. [Dkt. 10-2 at 2.] On October 14, 2020, Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Dkt. 1.]

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the

evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II. BACKGROUND

Claimant was 45 years old on her amended alleged onset date. [*See* Dkt. 10-5 at 2.] She has completed high school. [Dkt. 10-6 at 7.] She has worked as a daycare attendant. [Dkt. 10-6 at 8.][3]

The ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Claimant was not disabled. [Dkt. 10-2 at 25-26.] Specifically, the ALJ found as follows:

- At step one, Claimant had not engaged in substantial gainful activity[4] since June 21, 2016, the amended onset date. [Dkt. 10-2 at 20.]

- At step two, Claimant had "the following severe impairments: fibromyalgia, ankylosing spondylitis, rheumatoid arthritis, history of carpal and cubital tunnel syndrome, degenerative disc disease of the cervical spine, and obesity." [Dkt. 10-2 at 20 (citation omitted).]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- At step three, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Dkt. 10-2 at 22.]

- After step three but before step four, Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except: [s]he can stand or walk for six hours, and sit for six hours per eight-hour workday.  She can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds.  She can occasionally balance on level surfaces and can perform occasional stooping, kneeling, crouching, and crawling.  She can frequently reach in front, lateral[ly], and overhead with the left upper extremity.  She can perform frequent handling[,] fingering, and feeling bilaterally.  She can occasionally tolerate exposure to extreme cold, extreme heat, humidity, noise, vibration, moving mechanical parts, and unprotected heights.  She can perform simple, routine, repetitive tasks and can maintain sufficient concentration and attention to complete those tasks with reasonable pace and persistence."  [Dkt. 10-2 at 23.]

- At step four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, she was incapable of performing her past relevant work as a children's institution attendant.  [Dkt. 10-2 at 27.]

- At step five, relying on the VE's testimony and considering Claimant's age, education, work experience, and RFC, she could perform other work with jobs existing in significant numbers in the relevant economy in representative occupations such as a laboratory-sample carrier, collator operator, and router.  [Dkt. 10-2 at 28.]

### III. DISCUSSION

Claimant asserts three errors, arguing that: (1) the ALJ failed to follow Social Security Ruling ("SSR") 16-3p when evaluating Claimant's statements concerning her subjective symptoms; (2) the ALJ erred in assessing and explaining her RFC finding; and (3) the ALJ erred by excluding medical evidence that Claimant submitted prior to the hearing.  The Court will address the issues in turn.

**A. Subjective Symptoms Evaluation**

When evaluating a claimant's subjective statements about the intensity and persistence of her symptoms, the ALJ must often, as here, make a credibility determination concerning the

5

limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).[5] Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). "Credibility determinations will not be overturned unless they are clearly incorrect. As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citations omitted); *see Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to evidence in the record" may not be disturbed as patently wrong.). If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," including the regulatory factors relevant to a claimant's symptoms, such as daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief

---

[5] SSR 16-3p, which rescinded SSR 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her credibility. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole*, 831 F.3d at 412.

of pain or other symptoms. SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *6-8; 20 C.F.R. § 404.1529(c)(3).

Claimant correctly notes that the ALJ must consider several factors, including her daily activities, but the ALJ cannot reject her pain complaints based solely on the objective medical evidence. [Dkt. 14 at 19.] Claimant contends that the ALJ placed undue weight on Claimant's ability to perform her daily activities. [Dkt. 14 at 20-22.] Claimant also asserts that the ALJ made no effort to apply the remaining factors of SSR 16-3p. [Dkt. 14 at 22.] As a result, Claimant contends that the ALJ did not provide a logical bridge between the evidence and her relevant conclusions. [Dkt. 14 at 22-23.]

The ALJ explained that Claimant alleged disability because she had bodily pain that lasted for at least three hours each day and was getting worse, she was drowsy from pain medication, she was unable to concentrate, she could lift no more than the weight of a gallon of milk, she could walk no more than 25 to 50 feet without needing to stop, she needed to use a cane to ambulate, she tired easily, and she needed to rest multiple times throughout the day. [Dkt. 10-2 at 24.] However, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." [Dkt. 10-2 at 24.]

The ALJ alluded to multiple factors when assessing Claimant's credibility, including factors that supported her allegations. The ALJ acknowledged that Claimant had arthroscopic surgery on her left shoulder to repair a torn rotator cuff, and that her providers had prescribed "various medications for pain." [Dkt. 10-2 at 25.] However, the ALJ found that there was evidence that contradicted Claimant's allegations, including both objective medical findings and

other evidence that is relevant to the factor-based subjective symptoms evaluation. [*See* Dkt. 10-2 at 25-26.]

Concerning one of the ALJ's reasons for her adverse credibility finding, the Seventh Circuit has "criticized ALJs for equating activities of daily living with an ability to work," even though the ALJ is not only permitted but instructed to consider daily activities. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing 20 C.F.R. § 404.1529(c)(3)(i)). The ALJ may properly use activities of daily living to demonstrate that the claimant's testimony was undermined about the extent of her exertional limitations. *Id*.; *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013). However, the Seventh Circuit has repeatedly held that an ALJ cannot rely on minimal daily activities, particularly when the ALJ has not given any apparent consideration to the claimant's description of her abilities to perform those activities with important qualifications. *See, e.g.*, *Clifford*, 227 F.3d at 872. In *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), the court explained:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

The ALJ acknowledged that Claimant testified that she needed "assistance from others in performing household chores and, at times, in dressing." [Dkt. 10-2 at 24 (citation omitted).] However, the ALJ concluded that the Claimant had "been able to engage in a relatively normal level of daily activity." [Dkt. 10-2 at 26.] The ALJ cited Claimant's reports to a treating provider that she could make her bed and use her left upper extremity throughout the day. [Dkt. 10-2 at 26.] The ALJ also noted that Claimant reported being able to "conduct much of her own personal care," "watch television, shop via mail for clothing, and drive," and she was "able to

8

visit a deceased family member's grave three times per day." [Dkt. 10-2 at 26.] The ALJ explained that those "activities are consistent with an ability to perform a reduced range of light work." [Dkt. 10-2 at 26.]

Following Claimant's left shoulder surgery, she reported to her physical therapist, on December 1, 2016, that she could "make the bed and ha[d] been using [her left upper extremity] throughout the day." [Dkt. 10-7 at 120.] However, on December 6, 2016, she reported that she had strained her neck and left shoulder when she pushed herself up from the couch. [Dkt. 10-7 at 124.] Claimant reported that she had previously stopped taking pain medication and had "only 1/10" left shoulder pain that was "much better managed," but "10/10" pain had returned following the strain. [Dkt. 10-7 at 124.] She also reported, in September 2017, that she was visiting her father's grave, "3 times per day," shortly after he died. [Dkt. 10-7 at 356.] However, the record does not indicate how much travel, walking, and standing was involved, how much time she spent visiting her father's grave, or how long she continued to do so at that frequency following his death. The isolated references to such activities provide little insight into Claimant's longitudinal functioning.

The remaining activities identified by the ALJ—watching television, shopping by mail, and driving—do not demonstrate that Claimant could perform light exertional work[6] generally or support the ALJ's RFC determination more specifically. The activities also do not demonstrate that Claimant's allegations that she was limited to lifting a gallon of milk, walking 25 to 50 feet

---

[6] According to the regulatory definition cited by the ALJ and incorporated into her RFC finding, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

before needing to rest, using a cane to walk, and needing to take breaks to lie down and rest were incredible.

The ALJ also relied on the observation of Claimant's treating rheumatologist that her rheumatoid arthritis was well controlled. [Dkt. 10-2 at 25.] SSR 16-3p provides guidance that "in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," the "[o]ther evidence that [the SSA] will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." 2017 WL 5180304, at *6. On September 29, 2016, when Claimant resumed treatment with a rheumatologist, she reported that she was "not doing well." [Dkt. 10-7 at 41.] Her rheumatologist's diagnostic impressions were that the Claimant had "an inflammatory polyarthritis with features of spondylitis as well as small joint involvement suggestive of rheumatoid arthritis," that was being treated with "Humira as monotherapy." [Dkt. 10-7 at 41.] Claimant reported 8/10 pain. [Dkt. 10-7 at 41.] Her examination revealed a "slight spasm" around her cervical spine, "mild PIP [proximal interphalangeal joint] swelling right greater than left hand," and she could make a "75% fist." [Dkt. 10-7 at 42.] Her rheumatologist continued Humira and started methotrexate injections for her inflammatory arthritis. [Dkt. 10-7 at 42.] She was also prescribed a different muscle relaxer for her spasms. [Dkt. 10-7 at 43.] On May 1, 2017, Claimant reported still not doing well with 7/10 pain. [Dkt. 10-7 at 38.] She reported "a few hours of morning stiffness, gelling, and pain and swelling in her hands." [Dkt. 10-7 at 38.] She also reported that "Humira was extremely beneficial initially, but she feels it has lost efficacy." [Dkt. 10-7 at 38.] Her examination recorded "PIP tenderness and swelling especially right fifth PIP, slight MCP [metacarpophalangeal joint] tenderness, right 50% fist and

10

left 75% fist." [Dkt. 10-7 at 38-39.] Her rheumatologist recommended trying Simponi ARIA infusions for her seronegative rheumatoid arthritis. [Dkt. 10-7 at 39.]

On October 9, 2017, Claimant continued to report to her rheumatologist that she was "not doing well," and she had 6/10 pain. [Dkt. 10-7 at 365.] She reported feeling stiff all day "with no pattern of morning stiffness." [Dkt. 10-7 at 365.] Her examination revealed "slight PIP swelling, no MCP swelling, 100% fist." [Dkt. 10-7 at 365-66.] Claimant's rheumatologist explained:

> She has an inflammatory polyarthritis that is likely well controlled using methotrexate injections 10 mg/week and Simponi ARIA infusions; this is evidence by her lack of real morning stiffness, little[,] small joint swelling, and lack of significant back pain. Her shoulder pain, knee pain, and heel spur pain represent orthopedic issues.

[Dkt. 10-7 at 366.] Her rheumatologist referred her to an orthopedic surgeon for her knee pain and a podiatrist for her heel pain. [Dkt. 10-7 at 366.]

On December 15, 2017, Claimant was evaluated by another specialist for her knee and foot pain. [Dkt. 10-7 at 372.] Claimant's appearance was recorded as "pleasant, well developed and well nourished, comfortable, [and] non-ill appearing." [Dkt. 10-7 at 372.] Her gait was recorded as "plantigrade, normal tandem gait" and she had "normal" strength in her feet. [Dkt. 10-7 at 372.] However, her treatment recommendations included over-the-counter analgesics, topical nitroglycerine patches, physical therapy, and exercises aimed at weight loss with limited weightbearing such a swimming or biking, as well as the possibility of more aggressive treatment like injections or surgery with additional follow up. [Dkt. 10-7 at 373.]

The statement of Claimant's rheumatologist that her inflammatory polyarthritis was likely well controlled does not demonstrate that Claimant was without limitations from her pain. Claimant consistently reported not doing well with high pain levels. Her rheumatologist did not

suggest that she was embellishing her pain; rather, she suggested that her pain was caused by a condition other than her inflammatory polyarthritis. The specialist to whom Claimant was referred by her rheumatologist gave treatment recommendations that implied that she would not be able to tolerate weightbearing exercise.

The reasons given by the ALJ for rejecting Claimant's allegations regarding her subjective symptoms are not supported by the record. Accordingly, remand is necessary for further consideration of Claimant's symptoms and her resulting RFC.

### B. Other Arguments

Claimant's remaining arguments—about the ALJ's RFC finding and the evidence that was submitted prior to the hearing but not considered by the ALJ—are rendered moot by the need for remand. However, one further error made by the ALJ is noteworthy.

Claimant explains that her hearing representative, an attorney, submitted updated medical evidence including an RFC assessment by a "treating physician" before the hearing, but that he submitted the evidence after the regulatory deadline. [Dkt. 14 at 30.] Claimant asserts that the SSA's relevant regulation makes clear that an ALJ may admit evidence that was received after the regulatory deadline, but the regulation does not specify when the ALJ must admit such evidence. [Dkt. 14 at 30.] Claimant contends that because Social Security disability proceedings are inquisitorial rather than adversarial and the ALJ has a duty to investigate the facts and develop arguments both for and against granting benefits, remand is necessary for proper consideration of all the updated treatment records and the treating medical source statement. [Dkt. 14 at 31.]

20 C.F.R. § 404.935(a) explains in relevant part:

> Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written

12

> evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935 continues:

> (b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
> > (1) Our action misled you;
> > (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
> > (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
> > > (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
> > > (ii) There was a death or serious illness in your immediate family;
> > > (iii) Important records were destroyed or damaged by fire or other accidental cause; or
> > > (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

Here, the ALJ explained:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) are not met. There is no support for a contention that the claimant was unable to submit the evidence due to: (1) an action on behalf of the Administration that misled the claimant; (2) a physical, mental, education, or linguistic limitation that prevented [her] from informing the undersigned about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond [her] control that prevented [her] from informing the undersigned about or submitting the evidence earlier. Accordingly, the undersigned declines to admit this evidence.

[Dkt. 10-2 at 17-18.] At the beginning of the hearing, the ALJ explained:

> Okay, and **before we got on the record**, there was some discussion about records that were submitted that were requested about several months ago, but that just came in and were uploaded today and we discussed the five-day rule. And . . . I

>will take under advisement whether they will be admitted. If I can, if there is some exception to that five-day rule?

[Dkt. 10-2 at 39 (emphasis added & citations omitted).] Claimant's counsel on judicial review contends that Claimant's hearing representative actively and diligently sought updated medical records based on his relevant explanations given to the Appeals Council. [Dkt. 14 at 30-31 (citing Dkt. 10-6 at 81).] The Appeals Council listed the substantial treating evidence that had been submitted to the ALJ.[7] [*See* Dkt. 10-2 at 3.] However, because the ALJ allowed an off-the-record discussion concerning the evidence was that submitted, and she did not attempt to document what had been said during that discussion with Claimant's hearing representative, it is impossible to know for certain what explanation was given or what precisely the ALJ was taking under advisement. The ALJ did not elaborate any further on the discussion in the decision. Accordingly, the record frustrates meaningful review of the issue which, of course, is the problem with off-the-record conversations.

## IV. **CONCLUSION**

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Claimant benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

SO ORDERED.

Dated: 7 JAN 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[7] The actual evidence that was submitted to the ALJ was not included in the administrative record that was submitted to the Court by the SSA.

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.